IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02621-MSK-KLM

DANIEL A. ATCHISON,
PAUL GONZALES,
BENNEY GONZALES,
LAWRENCE GUERERRO, and
JAMES SILVA,

    Plaintiffs,

v.

BNSF RAILWAY COMPANY RAILROAD CO.,

    Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant BNSF Railway Company's Motion to Dismiss Counts III and IV of Plaintiffs' Complaint** [#8][1] (the "Motion"). Plaintiffs filed a Response [#9] in opposition to the Motion, and Defendant filed a Reply [#14]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion has been referred to this Court for a recommendation regarding disposition [#12]. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#8] be **GRANTED in part** and **DENIED in part**.

---

[1] [#8] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

## I. Statement of the Case

**A.     The Allegations**

Plaintiffs are former employees of Defendant, a railroad company. *See Compl.* [#1] at ¶¶ 1-6, 13-17. Plaintiffs allege that while employed by Defendant they "were exposed to harmful and/or hazardous dusts [including] asbestos and/or silica-containing dusts." *Id.* at ¶ 18. Plaintiffs assert four causes of action and seek actual damages, punitive damages, post-judgment interest, costs, and fees. *Id.* at ¶ 27. Specifically, Plaintiffs bring the following claims against Defendant: (1) negligence under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, *et seq.*; (2) violation of the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701-20903 (formerly known as the Locomotive Boiler Inspection Act and, as a result, referred to in much of the case law as the "BIA"); (3) violation of the asbestos regulations contained in the Occupational Safety and Health Act ("OSH Act"), 29 C.F.R. § 1910.1001; and (4) violation of the silica/silica dust regulations contained in OSH Act, 29 C.F.R. § 1910.1000 and 29 C.F.R. § 1926.55. *Compl.* [#1] ¶¶ 20-26.

In support of these claims, Plaintiffs allege that their duties as employees of Defendant were "in furtherance of and have closely, directly and substantially affected interstate commerce" and that, therefore, their rights are governed by FELA. *Id.* at ¶ 7. Plaintiffs further allege that despite Defendant's "knowledge regarding the health hazards associated with occupational exposure to asbestos and/or asbestos-containing dusts, [Defendant] continued to use asbestos and/or asbestos-containing products for decades thereafter." *Id.* at ¶ 8. Plaintiffs aver that while employed by Defendant, they "were exposed to harmful and/or hazardous dusts [including] asbestos and/or silica-containing dusts." *Id.* at ¶ 18. Plaintiffs maintain that they "suffered injuries to their lungs" as a result

2

of their "occupational exposure to these harmful and/or hazardous dusts." *Id.*

**B.     The Motion**[2]

In the Motion, Defendant argues that Plaintiffs' third and fourth causes of action brought under the OSH Act are subject to dismissal.  Specifically, Defendant offers three arguments in support of the Motion.  First, Defendant maintains that the OSH Act regulations do not apply to Plaintiffs because the regulations "were only intended to apply to workers in industries that involved direct contact with, or manipulation of, asbestos materials, while the silica regulations targeted the construction industry and sandblasting." *Motion* [#8] at 2.  Defendants argue that Plaintiffs are not covered by the OSH Act asbestos regulations because they "merely allege to have been exposed to asbestos or silica as a result of working in and around [Defendant's] cars, locomotives and track."  *Id.*  Second, Defendant argues that the OSH Act does not apply in this case because it is preempted by the LIA, 49 U.S.C. §§ 20701-20903, and the Federal Railroad Safety Act of 1970 ("FRSA"), 49 U.S.C. §§ 20101, *et seq*.  *Id.* at 4-7.  Defendants maintain that the FRSA and the LIA were introduced to exclusively regulate railroad equipment and related safety issues to the exclusion of other statutes.  *Id.*  Third, Defendants argue that  even if the OSH Act asbestos regulations do apply to Plaintiffs, "alleged OSH Act violations cannot serve as grounds [for] a negligence per se claim."  *Id.* at 7 (citations omitted).

In their Response, Plaintiffs first argue that violations of OSHA regulations are negligence per se.  *Response* [#9] at 4.  Plaintiffs further argue that FELA claims may be based on violations of any safety statute that results in death or injury, regardless of

---

[2]  The Court summarizes only those arguments presented which merit analysis.

3

whether the injury caused by the violation was the specific injury the statute sought to prevent. *Id.* at 5 (citation omitted). Plaintiffs maintain that contributory negligence is not to be considered when such a claim is brought. *Id.* Second, Plaintiffs argue that the FRSA does not preempt the OSH Act. *Id.* at 8-9. Specifically, Plaintiffs aver that "the railroad industry is subject to OSHA[3] regulations in those areas where the [FRSA] has not actually exercised its authority. . . . [and that] [t]he [FRSA] has not enacted safety regulations covering asbestos or silica exposure . . . ." *Id.* at 8-9. Third, Plaintiffs argue that the OSH Act asbestos regulations apply to all employers, including railroads. *Id.* at 9.

In its Reply, Defendant revisits the arguments advanced in its Motion. *Reply* [#15] at 2-4 (OSH Act does not apply to Plaintiffs), 4-7 (LIA and FRSA preempt the OSH Act), 7-10 (even if the OSH Act applies, it cannot serve as basis for a negligence per se claim).

## II. Documents Submitted by the Parties

Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, a Court may consider documents outside of the complaint on a motion to dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court

---

[3] "OSHA" is the Occupational Health and Safety Administration, which is tasked with promulgating and enforcing regulations to protect American workers.

may consider outside documents that are both central to plaintiffs' claims and to which plaintiffs refer in their complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

In support of the their Response, Plaintiffs submitted the following documents: (1) a portion of the OSH Act, 29 C.F.R. §§ 1910 [#9-1]; (2) a November 21, 1983 letter from Thomas Hatchard of the Association of American Railroads [#9-2]; (3) a November 9, 1983 letter from J.R. Fitzgerald [#9-3]; (4) a document titled "BNSF Railway Data Collection and Management Policies and Procedures for BNSF Industrial Hygiene Projects" [#9-4]; (5) a document titled "BNSF RR Hazard Communication Safety Briefing Fax-On-Demand Document #902" [#9-5]; (6) a document titled "BNSF Hazard Communication Safety Briefing Fax-On-Demand Document #919" [#9-6]; (7) excerpts from the May 23, 2011 deposition of James V. Shea from an unspecified lawsuit, reflecting Bates numbers BNSF004958 and BNSF005003 [#9-7]; (8) an excerpt from the deposition of Dave Maltar taken on an unspecified date in a lawsuit titled *Krouser v. BNSF*, reflecting Bates number BNSF004856 [#9-8]; (9) a document titled Defendant BNSF Railway Company's Designation of Expert and Fact Witnesses from case number 096-262868-12 filed in a Texas state court [#9-9]; (10) a September 17, 2012 letter from Larry R. Liukonen of Technical Safety & Health Consulting, Inc., which Plaintiffs refer to as an expert report from a case titled *Walker, et al. v. BNSF* [#9-10]; (11) an excerpt from the deposition of Don Cleveland taken on February 22, 2008 in a lawsuit titled *Jerry Grisham v. BNSF Railway Company*, reflecting Bates numbers BNSF003816-BNSF003817 [#9-11]; (12) an excerpt from the deposition of Melvin Burda taken on an unspecified date in a lawsuit titled *Krouser v. BNSF*, reflecting Bates numbers BNSF003762-BNSF003763 [#9-12]; and (13) courtesy

copies of three cases [##9-13, 9-14, 9-15].

The Court may consider the portion of the OSH Act [#9-1] and the courtesy copies of the cases [##9-13, 9-14, 9-15] because each is publicly filed and are matters of public record. *Tal*, 453 F.3d at 1265 n.24. In addition, the Court may be able to consider the document titled Defendant BNSF Railway Company's Designation of Expert and Fact Witnesses from case number 096-262868-12 filed in a Texas state court [#9-9] because it may have been filed in the state court action. However, it is unclear whether the document was filed publicly and, even if the document is subject to judicial notice, Plaintiffs ask the Court to accept as true the content of the document. *See Response* [#9] at 14. Documents subject to judicial notice that are considered on a motion to dismiss "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal*, 453 F.3 at 1265 n.24 (internal quotation omitted). Accordingly, the Court will not consider this document.

The Court may not consider any of the other documents provided by Plaintiffs. Plaintiffs offer no legal argument regarding whether the Court may consider these documents and the Court's independent analysis concludes that these documents do not fall within any of the exceptions discussed above. First, the Motion is brought pursuant to Rule 12(b)(6), not Rule 12(b)(1). Second, nothing about the documents indicates that they are subject to judicial notice. While some of the documents may be classified as relating to other judicial proceedings, they are not properly classified as court documents of which the Court may take judicial notice because there is no evidence that they are a matter of public record. Further, even if the documents are subject to judicial notice, Plaintiffs ask the Court to accept as true the content of the documents. Third, the documents are not

6

central to Plaintiffs' claims nor referred to in the Complaint. Accordingly, the Court will not consider these documents in resolving the Motion.

Defendant attached two exhibits to its Reply: (1) the Federal Railroad Administration's Railroad Occupational Safety and Health Standards, codified at 43 C.F.R. 10,583; and (2) a document titled Order Regarding BNSF Railway Company's Motion for Partial Summary Judgment on Plaintiff's Negligence Per Se Claims Based on Alleged OSHA Violations [#14-2] from case number 096-262868-12 filed in a Texas state court [#9-9]. The order was signed on November 19, 2013 by a Texas state court judge. The first document is a matter of public record, therefore, the Court may consider it. The second document is a state court record of which the Court may take judicial notice. *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).

### III.  Standard of Review

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  (citation omitted).  That said, "[s]pecific facts are not necessary[.  Instead,] the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[, and is not required to] include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192 (internal citation and quotation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

### IV. Statutory Background

**A.     FELA**

FELA provides that any railroad engaging in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of

any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51.  In short, "FELA permits railroad workers to recover for injuries caused by the negligence of their employers or fellow employees." *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001).  To prevail on a claim under FELA, "[a]n employee must prove that (1) his injuries occurred within the scope of his employment; (2) he was employed as part of the railroad's interstate transportation business; (3) the railroad was negligent; and (4) the negligence at least in part caused the injury for which the employee seeks compensation." *Volner v. Union Pacific R. Co.*, 509 F. App'x 706, 708 (10th Cir. Jan. 31, 2013) (table decision) (citation omitted).  To show negligence, the plaintiff must show duty, breach, foreseeability, and causation.  *Id.* (citations omitted).  "Thus, under FELA, an employer has a duty to provide its employees with a safe workplace, which it has breached if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees."  *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006) (internal quotation marks and citations omitted).

**B.    LIA**

The LIA states in relevant part:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances–

(1) are in proper condition and safe to operate without unnecessary danger or personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701.

The LIA "does not purport to confer any right of action upon injured employees." *Urie v. Thompson*, 337 U.S. 163, 188 (1949). However, "it has been held consistently that the [LIA] supplements [FELA] by imposing on interstate railroads an absolute and continuing duty to provide safe equipment." *Id.* (internal quotation marks and citation omitted). "The [L]IA is to be considered together with other federal railroad safety laws, and is to be construed liberally to carry out their remedial and humanitarian purposes." *King*, 855 F.2d at 1489 n.1 (citation omitted). The LIA requires railroads to maintain their locomotives and all of their parts in proper condition, while "FELA allows recovery in a board range of situations." *Id.* "As a result, claims which cannot be maintained under the [L]IA are often actionable under [ ] FELA." *Id.* (citations omitted).

**C.    FRSA**

"The FRSA was enacted in 1970 to 'promote safety in every area of railroad operations and to reduce railroad-related accidents and incidents.'" *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1211 (10th Cir. 2008) (quoting 49 U.S.C. § 20101). "To accomplish this purpose, FRSA confers authority upon the Secretary of Transportation to 'prescribe regulations and issue orders for every area of railroad safety.'" *Island Park, LLC v. CSX. Transp.*, 559 F.3d 96, 106 (2d Cir. 2009) (quoting 49 U.S.C. § 20103(a)). The FRSA makes clear that "[a]n employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier." 49 U.S.C. § 20109. Therefore, a worker must choose to either bring a claim under FRSA or another statute, but may not bring the same claim for relief under both statutes. *See Reed*

*v. Norfolk S. Ry. Co.*, 740 F.3d 420, 425 (7th Cir. 2014) ("For example, we agree that if [plaintiff] brought a claim under the Occupational Safety and Health Act, . . ., the election-of-remedies provision would bar a successive FRSA claim.").

### D.     The OSH Act

The overall goal of OSHA is to "assure so far as possible . . . safe healthful working conditions" for every American worker. 29 U.S.C. § 651(b). In order to effectuate that goal, OSHA is authorized to set "mandatory occupational safety and health standards," which are defined within the OSH Act as "practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). The OSH Act includes detailed regulations regarding exposure to asbestos by employees. *See* 29 C.F.R. § 1910.1001. Further, the OSH Act makes clear that it does not preempt other laws regarding employer liability for injuries suffered by employees in the course of employment:

> Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 2021 of Title 42, exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.
>
> . . .
>
> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. §§ 653(b)(1), 653(b)(4).

### V. Analysis

**A.     Defendant's Preemption Argument**

Defendant argues that the OSH Act may not be invoked by Plaintiffs because it is preempted by the LIA and the FRSA. *Motion* [#8] at 4-7. The Federal Railroad Administration ("FRA") was created by the Department of Transportation Act of 1966 and is charged with carrying "out all railroad safety laws of the United States . . . ." 49 U.S.C. § 103(a)-(b); *see also Washington v. CSX Transp. (R.R.)*, No. CV408-247, 2009 WL 1289032, at *2 n.1 (S.D. Ga. May 8, 2009). "The FRA initially attempted to promulgate safety regulations under a 'territorial approach' that would govern all aspects of the railroad industry." *Johnson v. Decatur Junction Ry., Co.*, No. 11-cv-1400, 2014 WL 339004, at *3 (C.D. Ill. Jan. 30, 2014). After considering setting Railroad Occupational Safety and Health Standards, the FRA "determined that it lacked the resources to regulate all aspects of employee workplace safety." *Id.* As a result, it issued a policy statement "setting forth the relationship between FRA safety regulations and OSHA safety regulations." *Id.*; *see Railroad Occupational Safety & Health Standards; Termination*, 42 Fed. Reg. 10,583 (March 14, 1978) (the "Policy Statement"). In the Policy Statement the FRA explained that it decided to focus its regulatory authority on railroad operations only:

> As is reflected by the termination notice set forth above, FRA has decided to focus its resources and energies for the immediate future on the safety of railroad operations. As used herein, "railroad operations" refers to the movement of equipment over the rails.

42 Fed. Reg 10,585. The FRA made clear that OSHA has jurisdiction over workplace safety in aspects of the railroad industry that are not properly categorized as "railroad operations":

12

> As noted above, FRA has determined that a territorial approach to the exercise of its statutory jurisdiction over railroad safety such as that proposed in the NPRM would deplete energies and resources better devoted to the safety of railroad operations. If FRA were to address all occupational safety and health issues which arise in the railroad yards, shops, and associated offices, the agency would be forced to develop a staff and field capability which, to an extent, would duplicate the capability already possessed by OSHA. In view of this situation, FRA recognizes that OSHA currently is not precluded from exercising jurisdiction with respect to conditions not rooted in railroad operations nor so closely related to railroad operations as to require regulation by FRA in the interest of controlling predominant operational hazards.

42 Fed. Reg 10,587. Specifically, with regard to OSH Act "Subpart Z" that governs "toxic and hazardous substances," including asbestos, the FRA stated:

> The OSHA regulations apply according to their terms, except with respect to the shipment or transportation of hazardous materials, which is controlled by the Department of Transportation Hazardous Materials Regulations and the regulation of air contaminants in locomotive cab and caboose environments.
>
> It is the judgment of FRA that the exposure of operating employees to air contaminants in the locomotive cab or caboose environment is an issue integrally related to the ability of employees to perform their duties and to the regulation of the rail equipment itself. Thus, air contaminant exposure in those particular environments must be viewed as a concern within two of the regulatory fields over which FRA has exercised jurisdiction (rail equipment, human factors). Specific FRA regulations bearing on the locomotive cab environment address cab ventilation (49 C.F.R. § 230.229(f)(2)) and exhaust gases (49 C.F.R. § 230.259). In addition, as noted above, the Locomotive Inspection Act prescribes a general requirement that each locomotive be safe and in proper condition. The current FRA proceeding on minimum safety standards for caboose cars includes an inquiry into the specific problems of crew exposure to air contaminants (42 FR 19359; April 13, 1977).

42 Fed. Reg 10,589. A plain reading of the Policy Statement makes clear that the FRA has jurisdiction over railroad employee exposure to air contaminants in the cab and caboose. "It is not necessary that the FRA implement specific regulations for [a specific area]; an assertion of authority in a policy statement is sufficient to displace OSHA regulations." *Velasquez v. S. Pac. Transp. Co.*, 734 F.2d 216, 218 (5th Cir. 1984). As noted above, the

13

OSH Act does not supercede another agency's authority to regulate workplace safety, *see* 29 U.S.C. §§ 653(b)(1), 653(b)(4); instead, the OSH Act fills the gaps.  Therefore, because the FRA has made clear that it is responsible for regulation pertaining to air contaminants in the cab and caboose, OSHA regulations may apply to railroad employee exposure to air contaminants in all other areas of the train and associated railroad areas.

Plaintiffs' allegations do not distinguish between their alleged exposure to asbestos and silica-containing materials in the cab or caboose of the trains while working for Defendant and in other areas of the trains and railroads.  The only indications of where they believe they were exposed to these substances are found in Plaintiffs' claims brought under FELA and the LIA.

> Plaintiffs' injuries and damages resulted, in whole or in part, from the negligence of [Defendant's] officers, agents or employees, or by reason of a defect or insufficiency, due to [Defendant's] negligence, in its cars, engines, appliances, machinery, track, roadbed, works, or other equipment, in violation of the Federal Employers' Liability Act . . . .
>
> While employed by [Defendant], Plaintiffs worked on, in and/or about locomotives and/or tenders[4] while these locomotives and/or tenders were in use and online.  These locomotives and/or tenders were laden and/or contaminated with asbestos and/or silica-containing materials which made the locomotives and/or tenders unsafe to operate without unnecessary danger of personal injury . . . .
>
> Accordingly, [Defendant] by and through its agents, servants, and employees, violated the . . . [LIA], by failing to provide Plaintiff[s] with locomotives and/or tenders and its parts and appurtenances which were in a proper and safe condition.

---

[4] "A tender is usually a railroad car that 'tends' a steam locomotive.  The tender runs directly behind the locomotive and carries fuel (wood, coal, or oil) and water to supply the locomotive's steam engine."  *Model Railroad Train*, About.com, http://modeltrains.about.com/od/glossary/g/tender.htm (Last visited June 11, 2014).  The Court, therefore, assumes without deciding that a "tender" is a part of the train dedicated to supplying fuel.

14

*Compl.* [#1] ¶¶ 20, 25-26. Without more detailed information regarding whether Plaintiffs worked exclusively in the cabs or cabooses of trains and whether they believe they were exposed to asbestos or silica-containing materials that allegedly caused their injuries in those locations only, the Court cannot conclude that Plaintiffs' OSH Act claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Therefore, to the extent the Motion seeks dismissal of Plaintiffs' third and fourth cause of action because the BIA and FRSA preempt the OSH Act, *Motion* [#8] at 4-7, the Court respectfully **recommends** that it be **denied**.

**B.      Applicability of OSHA Regulations to Railroad Workers**

Defendant also argues that OSHA regulations do not apply to Plaintiffs because they did not have "direct, hands-on contact with asbestos or asbestos-containing products." *Motion* [#8] at 2. As is clear from the FRA's Policy Statement, OSHA regulations do apply to the railroad industry unless the issue is addressed by industry-specific regulations promulgated by the FRA.   More specifically, then, the question is whether 29 C.F.R. § 1910.1001, the portion of the OSH Act regulating exposure to asbestos, protects railroad workers.

While the general language of 29 C.F.R. § 1910.1001 states that it "applies to all occupational exposures to asbestos in all industries covered by the Occupational Safety and Health Act, except as provided in paragraph (a)(2)[5] and (3)[6] of this section," 29 C.F.R. § 1910.1001(a)(1), OSHA has provided guidance that has limited the industries this section

---

[5]  29 C.F.R. § 1910.1001(a)(2) states that the asbestos regulation does not apply to "construction work as defined in 29 C.F.R. § 1910.12(b)."

[6]  29 C.F.R. § 1910.1001(a)(3) states that the asbestos regulation does not apply to "ship repairing, shipbuilding and shipbreaking employments and related employments as defined in 29 C.F.R. § 1915.4."

covers. Specifically, in response to litigation, OSHA clarified its standards regarding occupational exposure to asbestos. 59 Fed. Reg. 40964, *et seq* (Aug. 10, 1994). This final rule was effective as of October 11, 1994, *id.* at 40964, and states:

> The general industry standard covers all activities (except agriculture), covered by the Act which are not otherwise covered by the construction asbestos standard, 29 C.F.R. [§] 1926.1101, and the new shipyard employment standard, 29 C.F.R. [§] 1915.1001. . . . Formerly, the general industry standard has been considered the generic asbestos standard. However, because of dramatic changes in the market for asbestos containing products, the standard now covers only four industry segments, three of which are distinct from each other, and all are diminishing in volume and employee population. Brake and clutch repair is the activity engaged in by the largest group of asbestos exposed workers, although most of them are exposed sporadically and at low levels. Next largest is custodial workers who do not perform their duties as part of construction activities, but clean surfaces, sweep, buff and vacuum floors and wash walls and windows in manufacturing plants and a wide variety of public and commercial buildings. . . . The primary and secondary manufacture of asbestos containing products, completes the rooster of identifiable general industry sectors.

59 Fed. Reg. 40972-73. In 1999, OSHA clarified that the category "brake and clutch repair" included in 29 C.F.R. § 1910.1001(f)(3)[7] does not include the repair of brakes or clutches on railroad locomotives and cars but does include such repairs for certain other equipment, such as tractors and elevators. *OSHA Standard Interpretation for Standard No. 1910.1001(f)*, dated September 13, 1999.[8] Based on the information provided in the Complaint, Plaintiffs did not perform work that would fall into the other three categories of work that are regulated by 29 C.F.R. § 1910.1001, and the regulation does not apply to

---

[7] This subsection specifically relates to brake and clutch repair.

[8] This OSHA Standard Interpretation is not statutory authority but expressly "constitutes OSHA's interpretation of the requirements discussed" in the interpretation. The Standard Interpretation can be found on OSHA's website at: https://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=INTERPRETATIONS&p_id=23480 (last accessed on June 10, 2014).

Plaintiffs' work performed as employees of Defendant. Therefore, the Court respectfully **recommends** that, to the extent the Motion seeks dismissal of Plaintiffs' third cause of action pursuant to Fed. R. Civ. P. 12(b)(6) because the OSH Act's asbestos regulation does not apply to Plaintiffs' employment by Defendant, *Motion* [#8] at 2-4, it should be **granted**. On the other hand, Defendant offers no support for its proposition that the OSH Act subparts governing exposure to silica do not apply to Plaintiffs, therefore the Court respectfully recommends that, to the extent the Motion seeks dismissal of Plaintiffs' fourth cause of action pursuant to Fed. R. Civ. P. 12(b)(6) because the OSH Act's silica regulations do not apply to Plaintiffs' employment by Defendant, *Motion* [#8] at 2, it should be **denied**.

C.   **OSHA Regulations as the Basis for Negligence Per Se Claims**

Finally, Defendant argues that the OSH Act asbestos and silica regulations cannot serve as a basis for negligence per se claims. *See Motion* [#8] at 7-10. Because the Court has recommended that Plaintiffs' third cause of action regarding violation of the OSH Act's asbestos regulations be dismissed, it will focus its analysis on Plaintiffs' fourth claim.

Plaintiffs' fourth claim alleges that Defendant violated 29 C.F.R. § 1926.55 (OSH Act provision regarding gases, vapors, fumes, dusts, and mists) and 29 C.F.R. § 1910.1000 (OSH Act provision regarding air contaminants), and that such violations constituted "negligence and/or negligence per se." *Compl.* [#1] at 11-12.

The Tenth Circuit has not addressed the question of whether a violation of the OSH Act can serve as the basis for a negligence per se claim brought under FELA. However, many other courts have addressed this question and the Court agrees with Defendant that

the weight of authority from other circuits supports their position. *Motion* [#8] at 7-10; *Reply* [#14] at 3-7; *see Ellis v. Chase Commc'ns, Inc.*, 63 F.3d 473, 478 (6th Cir. 1995) ("OSHA does not create a private right of action. OSHA regulations can never provide a basis for liability. The Act itself explicitly states that it is not intended to affect the civil standard of liability.") (citation omitted); *Robertson v. Burlington N. R.R. Co.*, 32 F.3d 408, 410-11 (9th Cir. 1994) ("OSHA standards may be admitted in an FELA case as some evidence of the applicable standard of care. Such evidence, however, is to be considered only in relation to all other evidence in the case, and a violation of an OSHA regulation is not negligence per se."); *Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156, 1162 (3rd Cir. 1992) ("After examining the scope of [the] OSH [Act] and the FELA respectively, it is clear to this court that Congress did not intend for a violation of an OSHA regulation to result in negligence per se and bar contributory negligence under the FELA."); *Albrecht v. Baltimore & Ohio R.R. Co.*, 808 F.2d 329, 332-33 (4th Cir. 1987) ("a negligence per se rule is inconsistent with § 653(b)(4) [of the OSH Act]").

In addition, the Tenth Circuit has made clear that for a plaintiff to prevail on a FELA claim, it is not enough to show some injury. *Volner*, 509 F. App'x at 2. Instead, the defendant "must actually be negligent for there to be liability under FELA." *Id.* Therefore, while the Tenth Circuit recognizes the relaxed causation standard for FELA claims, it would likely adopt the logic of its sister courts in holding that a simple violation of the OSH Act cannot serve as the basis for a negligence per se claim brought under FELA because the OSH Act explicitly states that it does not "supersede or in any manner affect any workmen's compensation law or [ ] enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law . . . ."

29 U.S.C. § 653(4).

In addition, Plaintiffs' reliance on *Practico v. Portland Terninal Co.*, 783 F.2d 255 (1st Cir. 1985), is troubling. The First Circuit revisited that decision in 1998 and stated that, given the subsequent decisions entered by other circuit courts, "the *Practico* holding is of questionable validity." *Elliott v. S.D. Warren Co.*, 134 F.3d 1, 4 (1st Cir. 1998). Further, Plaintiffs' argument that OSHA regulations are admissible to instruct the jury regarding federal standards has no bearing on whether Plaintiffs have stated a claim for negligence per se based on violation of an OSHA regulation.

Because allowing a negligence per se cause of action for a violation of an OSHA regulation is directly prohibited by 29 U.S.C. § 653(b)(4), the Court respectfully recommends that, to the extent Plaintiff's fourth cause of action is brought as a negligence per se claim, it should be **dismissed with prejudice**. Therefore, the Court respectfully **recommends** that the Motion [#8] be **granted** to the extent it argues that the OSH Act silica regulations cannot serve as a grounds for negligence per se claims. *See Motion* [#8] at 7-10.

## VI. Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that the Motion [#8] be **GRANTED in part** and **DENIED in part**.

The Court FURTHER **RECOMMENDS** that, because Plaintiffs' third cause of action is premised on alleged violations of 29 C.F.R. § 1910.1001, the claim be **DISMISSED with prejudice**.[9]

---

[9] *See Berneike*, 708 F.3d at 1151 (the "district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend [her] complaint.")

The Court FURTHER **RECOMMENDS** that, to the extent Plaintiff's fourth cause of action is brought as a negligence per se claim, the claim be **DISMISSED with prejudice**.[10]

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 12, 2014

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

(modification in original) (quoting *Brereton*, 434 F.3d at 1219).

[10] Plaintiffs' fourth cause of action is also brought as a negligence claim.  Therefore, the Court does not recommend that the fourth cause of action be dismissed in its entirety.